[Crim. No. 6837. First Dist., Div. One. Feb. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE BOEHM, Defendant and Appellant.

David B. Mogilefsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J. — Defendant Eugene Boehm was convicted after a jury trial of the crime of conspiracy to bring narcotics into a county jail.

His first assignment of error relates to what he calls "the final bit of testimony before the jury, that appellant had been convicted of so-called 'felony child beating.' "

Boehm took the stand and testified on his own behalf after which he was cross-examined by the district attorney. The prosecution then put on rebuttal witnesses, whereupon the court recessed for the day. At the next session of the court additional prosecution rebuttal witnesses testified. The prosecutor then, without objection, recalled Boehm to the witness stand to ask a question apparently overlooked on the previous cross-examination. The record shows the following to have then occurred:

"[DISTRICT ATTORNEY] : Mr. Boehm, have you ever been convicted of a felony?

"A. Yes, I have.

"Q. And what was the nature of that felony?

"A. It was injuring a child.

"Q. Pardon me?

"A. For injuring a child.

"Q. Injuring a child?

"A. Yes.

"Q. Felony child beating, is that correct?

"A. I am not exactly sure.

"[DEFENSE COUNSEL] : I wish to make the strongest objection. I want to make it at the bench.

"THE COURT: All right.

"(Counsel approach the bench.)

"[DEFENSE COUNSEL] : Judge, I want to make the strongest objection.

" [DISTRICT ATTORNEY] : I have no further questions.

"THE COURT: All right. Anything else?

" [DISTRICT ATTORNEY] : The People rest, Your Honor.

" (The witness was excused.)

" (Whereupon, counsel for the People and defendants presented arguments to the jury.) "

Boehm here contends error in the use by the prosecutor of the term "felony child beating" and in "saving up evidence of a prior felony, to be released on rebuttal and close to the end of all testimony."

There is no indication that the prosecutor's questions were not asked in good faith; the record before us shows that Boehm had in fact been convicted of "felony child beating," a violation of Penal Code section 273d. It is proper to secure a fair identification of the crime involved where a defendant-witness is questioned as to a prior felony. *People* v. *Smith,* 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222], states: "While the courts will be zealous to insure that the prosecuting attorney is not permitted to delve into the details and circumstances of the prior crime [citations], *simple questions designed to identify the particular felony involved in the conviction are allowable. Thus the name or nature of the crime may be asked. . . .*" (Italics added.)

While unnecessarily withholding such interrogation of a defendant in a criminal case until the closing minutes of the trial is not ordinarily to be condoned, under the circumstances here Boehm may not complain.

Boehm chose to make his objection to the closing questions of the district attorney *off the record* at the bench. We do not know what the objection was; it might have been that counsel was objecting to proof of a prior conviction, or its description as a "felony child beating," or to the stage of the trial at which the question was asked, or something else. It cannot be determined whether the district attorney offered a reason for the belated inquiry into Boehm's previous conviction, and if so, what the reason was. Nor do we have the judge's ruling, or the ground on which it was based. We are therefore unable to determine Boehm's instant contention of error.

Boehm's *on the record* statement that he wished to make "the strongest objection" is of no assistance to us. Such a general objection has repeatedly been held insufficient. (See *Bundy* v. *Sierra Lbr. Co.,* 149 Cal. 772, 776 [87 P. 622]; Witkin, Cal. Evidence (2d ed. 1966), §§ 1288-1290.)

Boehm urges that we should nevertheless give effect to the

general objection and infer that it related to his untimely call to the stand for further cross-examination. A more probable inference must be drawn. The record shows that no objection whatever was made when Boehm was recalled to the stand, asked if he had ever been convicted of a felony, and admitted such a conviction. It was not until several questions later when Boehm was asked if his prior offense was "felony child beating" that the first indication of an objection was made. Treating Boehm's "strongest objection" as relating to the description of the offense, as is more reasonable, there was no error. (See *People* v. *Smith, supra,* 63 Cal.2d 779, 790.)

 It is noted that the jury properly had knowledge that Boehm was a jail inmate at the time of the charged offense. This would tend to minimize the prejudice, if any, resulting from knowledge of Boehm's prior conviction.

 The next assignment of error concerns a meeting held in the judge's chambers shortly before the trial in the absence of Boehm and his attorney. At this meeting immunity was granted to a codefendant and the charge, as to him, was dismissed. It is urged that this proceeding was violative of "due process" and of Penal Code section 1043.

 As to the due process contention, the United States Supreme Court in *Snyder* v. *Massachusetts,* 291 U.S. 97, 107 [78 L.Ed. 674, 679, 54 S.Ct. 330, 90 A.L.R. 575], has stated: "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence and to that extent only."* (Italics added.) The rule has been expressed in *In re Dennis,* 51 Cal.2d 666, 672-673 [335 P.2d 657], as follows: "In other words, it appears that when the presence of the defendant *will be useful, or of benefit to him and his counsel,* the lack of his presence becomes a denial of due process of law." (Italics added.) In *Dennis* (p. 672) the court quoted with approval from *Snyder* v. *Massachusetts, supra,* the following: "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow."

 Penal Code section 1043 provides that "The defendant must be personally present at the *trial;* . . ." (Italics added.) This probably means that the defendant must be present at every stage of a felony prosecution after his apprehension. (See *People* v. *Williams,* 194 Cal.App.2d 523, 525-526 [15 Cal.Rptr. 191] ; *People* v. *Berling,* 115 Cal.App.2d 255,

267 [251 P.2d 1077].) However, it is held that section 1043 requires a defendant's presence only at such stages of the trial in which his substantial rights may be affected by the proceedings (*People* v. *Blye*, 233 Cal.App.2d 143, 149 [43 Cal. Rptr. 231]; *People* v. *Morales*, 60 Cal.App.2d 196, 200 [140 P.2d 461]); and that his presence is not necessary at proceedings which are merely preliminary or formal wherein no matters affecting his guilt or innocence are presented. (*Mooney* v. *Superior Court*, 130 Cal.App. 521, 522 [20 P.2d 106].)

 While we recognize that circumstances might be presented in which a defendant might be prejudiced by his absence from a conference at which immunity is granted a codefendant, we find no such prejudice here. A reading of the transcript of the brief recorded hearing shows that the hearing in no way affected his substantial rights to a fair trial, or otherwise. He would have had no voice in the granting of such immunity had he been personally present. Moreover, after the conference, but before the immunized witness took the stand several days later, appellant was furnished with a complete transcript of the immunity hearing which he could use for any impeachment value it might have. Appellant suggests no other way in which his substantial rights may have been adversely affected. In such circumstances we conclude that no showing has been made that appellant was in any way damaged or denied a fair trial. (See *People* v. *Blye, supra,* 233 Cal.App.2d 143, 149.) In the language of *Snyder* v. *Massachusetts, supra,* any possible benefit that he might have derived by being personally present at the conference would have been ''but a shadow.''

 Another assignment of error is that the grant of immunity to Boehm's codefendant, but not to Boehm, was a denial of equal protection of the laws. There is no merit to this contention. It has been repeatedly held that California's immunity statute is constitutional, and that, absent a policy of unfair and unequal law enforcement (which does not appear here), the prosecution may select the codefendant or coconspirator to whom immunity shall be given. (See *Powers* v. *Floersheim,* 256 Cal.App.2d 223, 233-234 [63 Cal.Rptr. 913]; *People* v. *Maldonado,* 240 Cal.App.2d 812, 816 [50 Cal. Rptr. 45]; *People* v. *Northrup,* 203 Cal.App.2d 470, 475 [21 Cal.Rptr. 448]; *People* v. *Clemons,* 182 Cal.App.2d 808, 818 [6 Cal.Rptr. 727]; *People* v. *Fowler,* 119 Cal.App.2d 657, 664 [260 P.2d 89]; *People* v. *Walther,* 27 Cal.App.2d 583, 590-591 [81 P.2d 452]; *People* v. *Frahm,* 107 Cal.App. 253, 260-

261 [290 P. 678].) This rule is particularly applicable where, as here, the evidence indicates the person granted immunity so that he may testify is not the leading figure, or originator, of the conspiracy.

It is contended that the trial court improperly restricted Boehm's cross-examination of the witness to whom immunity had been granted.

On cross-examination the witness testified at length and in detail on his relations with the district attorney both before and after the grant of immunity, and on other matters affecting his credibility. However, the court sustained objections to each of the following questions: "Isn't it true that you have been driving without a license on several occasions and that the highway patrol is presently deciding what it is going to charge you with?" "Do you want to be liked by [the district attorney]?" and "How long did you talk with [the district attorney] before you testified before the grand jury?"

While considerable latitude should be allowed in the cross-examination of such a witness for bias, nevertheless the scope of such cross-examination is within the sound discretion of the trial judge. His rulings will not be disturbed on appeal in the absence of a clear abuse of that discretion. (*People* v. *Ashley*, 166 Cal.App.2d 249, 254 [332 P.2d 758].) The test on appellate review is not whether a certain question should have been allowed, but whether a sufficiently wide range has been allowed to test the credibility and weight of the testimony. (*People* v. *La Macchia*, 41 Cal.2d 738, 743 [264 P.2d 15]; *People* v. *Lucas*, 155 Cal.App.2d 1, 7 [317 P.2d 104].)

Here an extremely wide latitude was allowed in the cross-examination. We see no error in the court's rulings on the questions here at issue.

It is also contended that the court erred in refusing to allow inspection of *"notes made by the district attorney"* relating to "notes, memoranda, or records pertaining to the interviews, dates, persons present between the district attorney's office" and the immunized witness. The court ruled that the desired information was the district attorney's "work product," but allowed inspection of any statements or writings made by the witness himself. And as previously stated, the court allowed a thorough cross-examination of the witness as to his "interviews" with the district attorney.

We think that the court did not err in holding the requested "notes made by the district attorney" to be his work product and not discoverable.

Code of Civil Procedure section 2016 as amended in 1963 states as relevant here: ''The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.''

 Boehm's final assignment of error is stated as ''The grand jury was biased and therefore the indictment against appellant should have been quashed.''

The claim of bias is based upon the following facts. Boehm's appointed counsel and the district attorney had contended at the polls for the latter's office in 1966. The district attorney's election campaign chairman was thereafter selected by the superior court as the foreman of the 1967 county grand jury which returned the instant indictment against Boehm.

Boehm argued below, as he does here, that his indictment should be quashed because ''allowing [the foreman] to participate in the grand jury proceedings constitutes a *prima facie* showing of bias and fundamental unfairness'' and ''the possibility of subconscious or overt collusion is even greater . . . where the grand jury foreman and the appellant's trial attorney had actually been at political odds.''

We conclude that Boehm's argument that the selection of a grand juror who is a friend of the district attorney *prima facie* implies bias against an indicted defendant, is without merit. No authority supporting this contention has been presented by Boehm, and we find none.

 It should be borne in mind that grand jury proceedings are part of the *charging process* of our criminal procedure, as distinguished from the later *guilt finding process*. (See *People* v. *Kempley,* 205 Cal. 441, 448 [271 P. 478].) An indictment must be supported by evidence of such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused. (See Witkin, Cal. Criminal Procedure (1963) p. 212.) The law gives an indicted defendant protection against abuse of a grand jury's power. The superior court is empowered to set aside an indictment when it is not based upon the required quality of evidence, or is otherwise not found, endorsed or presented as required by law. (Pen. Code, § 995.)

 No contention is made by Boehm that his indictment

was not supported by substantial and competent evidence. The record before us which includes the grand jury proceedings contains no suggestion of the foreman's *actual bias*. And, there being no evidence to the contrary, it will be presumed that the foreman possessed the statutory qualifications for a grand juror. (See Pen. Code, § 897.)

Before considering a charge against any person a grand juror "who has a state of mind in reference to the case or to either party which will prevent him from acting impartially and without prejudice to the substantial rights of the party," under pain of contempt, is required to retire. (Pen. Code, § 939.5.) It will be presumed that this official duty has been performed. (Evid. Code, § 664.)

Moreover, it appears to be the law of this state that even if a grand juror be biased, such is not a ground for setting aside an indictment.

In *People* v. *Kempley* (1928) 205 Cal. 441, 447-448 [271 P. 478], it was held that: "Prior to 1911 an indictment could be set aside upon any ground which would have been good ground for challenge either to the panel or to an individual grand juror on account of disqualification for bias [citations]. But in that year the provision of the code for the setting aside of the indictment on the ground of the bias of the grand juror was abolished. [Citation.] In view of the change in the law in 1911 it must be held that since that time the bias of a grand juror has not been a ground for setting aside an indictment." (See also *People* v. *Shepherd,* 200 Cal.App.2d 306, 314 [19 Cal.Rptr. 234—overruled on unrelated point by *People* v. *Jackson,* 59 Cal.2d 468, 470 [30 Cal.Rptr. 329, 381 P.2d 1].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.