[Crim. No. 6026. Third Dist. Aug. 20, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND HERNANDEZ, Defendant and Appellant.

## COUNSEL

- Karlton, Blease & Vanderlaan and John M. Poswall for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Daniel J. Kremer and Loren E. McMaster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendant appeals from conviction after jury verdict of violation of section 11502, Health and Safety Code (sale of heroin to a minor).

### QUESTIONS PRESENTED

1. No error in denial of new trial on ground of newly discovered evidence.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

2. Evidence of prior offense admissible and testimony concerning it by alleged accomplice did not require corroboration.

3. Testimony of minor admissible in spite of police tactics.

4. Sufficiency of the evidence.

### RECORD

Ruben Venegas, a minor 17 years of age, together with Ray Cardova and Punchie Vitalis were involved in February 1970 in a burglary in Sacramento County. Venegas' part in the affair was to designate the house to be "hit," drive the car of the burglars to the house, wait outside and then help load the stolen articles into the car. The trio then went to the home of Rudy Flores in Broderick, Yolo County, where defendant was present. The stolen property was purchased by defendant and Flores, who paid Venegas therefor in heroin and the other two in money and heroin. Defendant cut the heroin before giving it to the trio. The three then went to Vitalis' home where they "shot up heroin," Venegas taking it for the first time.

Venegas was on probation for a prior offense and was a ward of the juvenile court. On being picked up for the burglary by police officers, it was determined that he had information concerning the sale of narcotics. The possibility of his working with the police was discussed and he pointed out to them the Flores' house where he had obtained the heroin. In a consultation with Yolo and Sacramento County officers Venegas agreed to work for the Yolo County sheriff's office. Although not promised immunity the burglary charge was dropped. Permission of his parents was obtained for his working with the sheriff's office. His probation officer knew that Venegas was participating in narcotics work although he did not know that he was an undercover operator.

Venegas was instructed to work with Deputy Sheriff Delaini and was to make narcotic contacts and buys. Venegas went to Flores' home but was unable to make a buy. The next day he succeeded in purchasing heroin there, receiving one-half of his purchase. On March 4 he returned for the other half. Cardova and defendant were present. Venegas told defendant that Flores, who was not present, owed him half of a balloon. Defendant Cardova and Venegas then went into the garage. Venegas then bought $15 worth of heroin from defendant. Venegas subsequently gave this heroin to Officer Dalaini. At the trial Venegas testified that although present at the sale, Cardova handled neither the heroin nor the money. Officer Delaini had given Venegas the money to make the buy, and had searched Venegas before he went to the Flores home. When Venegas returned with the heroin, Venegas had $15 less in his possession than before.

Defendant did not testify. One Beckwith was called by defendant and testified in effect that Venegas told him he was earning $40 per day catching narcotics dealers, and that he, Beckwith, could do the same, also that Venegas expected to "get into" the sheriff's office.

### 1. *Motion for New Trial.*

Defendant moved for a new trial on the ground of newly discovered evidence. At the evidentiary hearing thereon, Cardova, whom, prior to trial, both the prosecution and defense had tried to locate without success, testified that he was present with defendant and Venegas at the time Venegas claimed to have purchased heroin from defendant, that he saw and heard everything that transpired and that defendant did not sell or give anything to Venegas, nor did Venegas ask defendant for heroin but did ask Cardova for it. When asked if he furnished Venegas with heroin, he refused to answer on the grounds that he might incriminate himself. The court refused to require him to answer.

The judge then stated that he did not believe Cardova, that Cardova's testimony was incredible and insufficient to warrant a new trial, and that Cardova should not be permitted to relate to a jury facts which tend to favor defendant without laying himself open to cross-examination on those facts, and that by his claim of privilege against self-incrimination he would be denying the prosecution the opportunity to test his abbreviated version of the facts and his reliability as a witness. The judge was right.

A motion for new trial on the ground of newly discovered evidence is looked upon with disfavor. (*People* v. *Williams* (1962) 57 Cal.2d 263, 274 [18 Cal.Rptr. 729, 368 P.2d 353].) The granting or denial of such a motion is within the sound discretion of the trial court and, absent a clear showing of abuse of discretion, will not be reversed on appeal. The proper test to be applied by the trial court is whether a second trier of fact would probably reach a different result on the basis of the new evidence. (*People* v. *Huskins* (1966) 245 Cal.App.2d 859, 862 [54 Cal. Rptr. 253]; see *People* v. *Mattison* (1971) 4 Cal.3d 177, 188 [93 Cal. Rptr. 185, 481 P.2d 193].)

The court applied the proper test and did not abuse its discretion. Not only did the court find Cardova's testimony incredible (the weight and credibility to be attached to testimony in support of the motion is for the trial judge (*People* v. *Jefferson* (1956) 47 Cal.2d 438, 446 [303 P.2d 1024])), but that because of Cardova's claiming the privilege against self-incrimination and thereby being unable to testify fully concerning the meeting between defendant, himself and Venegas, a different result at a new trial was not reasonably probable. In *People* v. *Hill* (1969) 70 Cal.2d 678 [76

Cal.Rptr. 225, 452 P.2d 329], the trial judge held the testimony of the new witness on a motion for new trial as unworthy of belief. His denial of the motion was upheld.

*People* v. *Gompertz* (1951) 103 Cal.App.2d 153 [229 P.2d 105], presents a factual situation analogous to that in the instant case. There a witness submitted, after trial resulting in conviction of the defendant, an affidavit to the effect that the defendant was innocent, and implicating himself. The trial court denied a motion for new trial based upon this affidavit, on the ground that the witness at a new trial could refuse to testify to the facts set forth in the affidavit, and, therefore, this evidence would not be introduced at a new trial. The appellate court, in holding that the trial court was correct, stated "It is not uncommon, after trial, for one not charged with a crime to attempt to absolve his fellow confederate who has been convicted. [Citation.] The trial court was not bound to accept the statement of [the witness] as true. [Citation.] It was entitled to regard it with distrust and disfavor. [Citations.]" (P. 163.)

The Supreme Court in *People* v. *Williams* (1962) 57 Cal.2d 263, 272 [18 Cal.Rptr. 729, 368 P.2d 353], approved the appellate court's resolution of *Gompertz*.

The fact that Cardova appeared and testified to a limited extent did not constitute a waiver of his privilege. Cases cited by defendant are not applicable. Among them the following: *People* v. *Barker* (1965) 232 Cal.App. 2d 178 [42 Cal.Rptr. 651], merely holds that the court may not exclude testimony of a witness who does not claim the privilege of not incriminating himself. Cardova, in the instant case, did claim the privilege.

In *People* v. *Freshour* (1880) 55 Cal. 375, the witness "testified very fully as to his own connection with the actual commission of the alleged crime—that he was present at and a party to the larceny charged against the defendant" (p. 376), but claimed privilege when he was asked details.

In *People* v. *Wilson* (1967) 254 Cal.App.2d 489, 491 [62 Cal.Rptr. 240], the defendant was held to have waived his privilege under circumstances slightly like the situation in the case at bench. However, it must be noted that as said in *People* v. *Bernal* (1967) 254 Cal.App.2d 283 [62 Cal.Rptr. 96], certiorari denied 393 U.S. 865 [21 L.Ed.2d 133, 89 S.Ct. 147], which held that testimony regarding nonincriminating matters was not a waiver of the privilege, "A distinction may be made with respect to a witness, not a defendant; he has no choice whether to be a witness, hence the question of waiving the privilege does not arise until he answers or refuses to answer a specific question. [Citation.] Having in mind the exigencies of trial procedure, we apprehend no error of which defendant may take ad-

vantage in the retrospective and delayed claim against self-incrimination. The court acted within its discretionary power to control the introduction of evidence." (P. 287.) "[T]he defendant, as opposed to the witness, has no right which he may assert superior or even equal to that of the witness who exercises the privilege against self-incrimination; the defendant may call the witness; he cannot compromise the witness' testimonial sanctuary to his own uses by using it as a springboard from which to shift the indication of his own guilt." (*Id.*, p. 294.) The court was not required to grant immunity to Cardova. In *People* v. *Williams* (1970) 11 Cal.App.3d 1156, 1164 [90 Cal.Rptr. 409], the court, quoting from *People* v. *Boehm* (1969) 270 Cal.App.2d 13, 20-21 [75 Cal.Rptr. 590], said, " 'It has been repeatedly held . . . that, absent a policy of unfair and unequal law enforcement (which does not appear here), the prosecution may select the codefendant or coconspirator to whom immunity shall be given.' [Citations.]"

## 2. *Prior Offense.*

■ Defendant contends that the court erred in admitting evidence, hereinbefore set forth, of the event at Flores' home in February, where defendant purchased from Venegas and the others stolen articles, paying therefor in heroin.

As stated by the trial court the evidence was admissible because it tended logically, naturally and by reasonable inference to establish facts material in this case. It showed a modus operandi similar to the method in the instant case, in that both sales were made to the same minor at the same house (not that of the defendant) involving the same drug. It showed that defendant several days before the sale charged had in his possession heroin for sale.

The court held that the evidence was admissible to show motive and intent (*People* v. *Archerd* (1970) 3 Cal.3d 615, 638 [91 Cal.Rptr. 397, 477 P.2d 421]); defendant's identity as the perpetrator of the crime charged (*People* v. *Clark* (1970) 6 Cal.App.3d 658, 665 [86 Cal.Rptr. 106]); and modus operandi (*People* v. *Archerd, supra,* at p. 639). It was for the trial court to determine, as it did, that the relevancy and materiality of the prior sale made its probative value outweigh its prejudicial or inflammatory effect. (*People* v. *Archerd, supra,* at p. 638.)

■ In *People* v. *Schader* (1969) 71 Cal.2d 761, 775 [80 Cal.Rptr. 1, 457 P.2d 841], the Supreme Court set forth a three-pronged test to determine whether or not another offense should be admitted. This test is whether the prior offense logically tends to prove the issue on which it is offered, that this issue is material to the prosecution's case, and that this

evidence is not cumulative. ■ Here, defendant based his defense on an attack of Venegas' credibility, and an attempt to create reasonable doubt that it was he and not Cardova who sold the heroin to Venegas at the prior time. The evidence of the prior offense meets the tests prescribed by *Schader*.

■ Defendant's contention that the evidence of the other crime was improperly admitted in that the testimony of Venegas concerning it was not corroborated is not well taken. "It is settled law that during the guilt trial evidence of other crimes may be proved by a preponderance of the evidence, and that so far as proving other crimes by the evidence of an accomplice is concerned corroboration is not necessary. [Citation.]" (*People* v. *McClellan* (1969) 71 Cal.2d 793, 804 [80 Cal.Rptr. 31, 457 P.2d 871].) Moreover, Venegas was not an accomplice of defendant. He could not have been prosecuted for the identical crime with which defendant was charged (sale of heroin), which is the test to determine whether one is an accomplice. (Pen. Code, § 1111; *People* v. *Santo* (1954) 43 Cal.2d 319, 326 [273 P.2d 249].)

### 3. *Testimony of the Minor.*

■ Defendant contends that the testimony of Venegas should have been excluded because as a ward of the juvenile court he should not have been made an undercover narcotics agent. As defendant states, the use of a ward of the juvenile court as such was an unconscionable and reprehensible police practice. However, it does not lessen defendant's guilt nor did it violate any constitutional or other right of defendant. As stated by the trial court, defendant has no standing to raise the conduct of the police in this instance. While defendant weeps copious tears over the conduct of the police, his great concern is that thereby he may be able to escape punishment for his reprehensible crime. Releasing a person obviously guilty of selling heroin to a minor is not a proper way of disciplining the police.

### 4. *Sufficiency of the Evidence.*

■ Defendant's contention that the evidence is insufficient to support the verdict is based upon four grounds: (1) that Officer Delaini did not personally observe the sale which took place at Flores' garage; (2) the officer's search of Venegas' pockets prior to his going to the Flores home (his socks and shoes were not searched) was insufficient; (3) there was a divergence between Officer Delaini's description of the weather on the day in question and the stipulation of counsel on the same subject—this, according to defendant, made the officer's entire testimony incredible; and (4) Venegas' testimony was inherently incredible. These were matters going only to the weight of the evidence and were for the jury to consider.

Even though Officer Delaini was not in full view of Venegas, defendant and Cardova at the time the actual sale was made, the evidence is reasonably susceptible of the inference that the narcotics were obtained from defendant. (See *People* v. *Rodriguez* (1962) 202 Cal.App.2d 191, 194-195 [20 Cal.Rptr. 556], overruled on another point in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 826 [48 Cal.Rptr. 366, 409 P.2d 206].) The cases cited by defendant apparently involved situations where the informant did not testify at the trial and hence are not applicable to the facts herein. The same logic as to the determination of the weight of the evidence, by the jury, applies to defendant's contention that Venegas was only given a superficial search before and after the buy.

Defendant would have us reweigh the evidence and determine the credibility of the witnesses. This we cannot do. (*People* v. *Knighton* (1967) 250 Cal.App.2d 221, 231 [58 Cal.Rptr. 700].) Our function is to determine whether there is substantial evidence to warrant the finding of guilt by the jury, not whether guilt was proved beyond a reasonable doubt. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) Here, the jury determined the credibility of the witnesses, weighed the evidence, and resolved all factual conflicts against the defendant. There is substantial evidence to support the verdict.

Judgment affirmed.

Pierce, P. J., and Janes, J., concurred.

A petition for a rehearing was denied September 15, 1971, and appellant's petition for a hearing by the Supreme Court was denied October 21, 1971. Peters, J., was of the opinion that the petition should be granted.